UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRETT BARTON,                              )
                                           )
            Plaintiff,                     )
                                           )
      v.                                   )   No. 4:15 CV 1723 DDN
                                           )
NANCY A. BERRYHILL,[1]                     )
Acting Commissioner of Social Security,    )
                                           )
            Defendant.                     )

**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Brett Barton for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, et seq., and supplemental security income under Title XVI of that act, 42 U.S.C. § 1381, et seq. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the defendant Commissioner is affirmed.

**I. BACKGROUND**

Plaintiff was born on June 17, 1972. (ECF No. 13 at 38) (Tr. 38). He filed his Title II and Title XVI applications on November 30, 2012, alleging an onset date of August 16, 2011, and alleging he was unable to work due to back problems, shaking from the waist up, and depression. (Tr. 59). Plaintiff's applications were denied on January 17, 2013 and thereafter he requested a hearing before an Administrative Law Judge (ALJ). Following the hearing on June 18, 2014, the ALJ denied plaintiff's applications.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. 42 U.S.C. § 405(g).

(Tr. 14-16). The Appeals Council denied plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. MEDICAL AND OTHER HISTORY

Plaintiff has a substantial employment history: as a Nurse Aide from 1991 to 1997, as a serviceman for a gas utility from 1998 to 1999, as a tire service mechanic from 2000 to 2003, as a janitorial supervisor from 2004 to 2006, and as an auto sales mechanic from 2007 to August 16, 2011. (Tr. 167).

In August 2010 plaintiff took part in a sleep study at the Phelps County Regional Medical Center (Phelps County Regional) to address his sleep apnea problem. (Tr. 244-46). The doctor recommended plaintiff stop smoking, lose weight, and wear his CPAP machine. (Tr. 244). After complaining of headaches later that month, plaintiff received a CT scan which was negative. (Tr. 243).

In mid-September 2010, plaintiff first began sporadic treatment for lower back pain. He received multi-level facet joint injections by Glenn Kunkel, M.D., at Phelps County Regional based on lumbosacral spondylosis without myelopathy. (Tr. 239).

In October 2010, after complaining of neck pain plaintiff underwent MRIs of the cervical, thoracic, and lumbar spine. (Tr. 231-34). The cervical MRI revealed disc extrusion at the C5/C6 level. The thoracic MRI revealed mild degenerative disc disease as well as mild foraminal narrowing at the T9/10 and T10/11 levels, but no evidence of any central canal stenosis. (Tr. 233-34). The lumbar MRI showed mild foraminal narrowing and no significant recurrent disc herniation. (Tr. 231).

In January 2011, plaintiff received a series of facet injections due to radiating lower back pain. (Tr. 225-27). He also participated in a lumbar puncture study in March; however, no lab analysis was included in the record. (Tr. 222).

On May 12, 2011, he had his tonsils removed. (*Id.*).

On June 17, 2011, due to chest pain and shortness of breath plaintiff had a chest X-ray, which revealed no acute cardiopulmonary process. (Tr. 213). An associated EKG similarly showed no acute changes. (Tr. 211).

On August 16, 2011, his alleged disability onset date, following an injury at his place of employment, plaintiff had an MRI of the lumbar spine at the Rolla Radiology Group. The MRI report showed some foraminal stenosis and a small posterior annular tear at the L4/L5 level, but no evidence of recurrent or residual disc herniation and no significant central spinal stenosis. (Tr. 369-71).

From September through mid-November, 2011, plaintiff then underwent physical therapy at Sport Rehab, Inc. in Rolla, but quit because he felt he was not making any significant improvement. (Tr. 276-87, 45).

In August of 2013, after complaining of more headaches and left-sided weakness, an MRI on plaintiff's brain was performed which was found to be "essentially unremarkable." (Tr. 288).

In early October 2013, plaintiff underwent a cardiovascular consultation with Dr. Timothy Martin, M.D., at Phelps County Regional Medical Center. (Tr. 323-27). Dr. Martin's physical examination showed, among other things, full range of motion in the neck, regular heart rate, no clubbing, cyanosis or edema in the extremities, and 5/5 motor strength. (Tr. 326). However, due to the uncertain etiology of his chest complaints a myocardial stress test was ordered. (Tr. 327).

In mid-October 2013, the stress test was administered and revealed normal findings throughout. (Tr. 301-06). An associated rest lexiscan study at the time revealed similarly normal findings. (Tr. 299-300). An EKG at the same time revealed mild left atrial enlargement and mild pulmonary hypertension. (Tr. 301-02).

In November and December of 2013, and in March of 2014, the plaintiff had follow-up visits with Dr. Martin which showed him making substantial improvements over the course of those months. (Tr. 308-22).

On November 25 and December 23, 2013, February 3 and 17, and March 17, 2014, plaintiff was seen by Rachelle L. Gorrell, DO, at the Forest City Family Practice. (Tr. 334-66).

On March 18, 2014, Dr. Martin examined plaintiff for chest pain, hypertension, hyperlipidemia, tobacco use, and obesity. Descriptive of how plaintiff had improved, Dr. Martin reported:

> 1. Chest pain. The patient has been having episodes of chest pain which he describes as sharp, left submammary, occurring spontaneously and resolving spontaneously. It is not associated with exercise. At his last visit it was thought to be musculoskeletal and not further treatment was done. Since the last visit he has continued to improve. He has only had occasional episodes of chest pain but no other signs or symptoms of angina.
>
> * * *
>
> REVIEW OF SYSTEMS:
> General: The patient denies any weakness or fatigue, change in weight, or diaphoresis. Neck: Denies any neck pain or stiffness with vertical or horizontal motion. Chest: Denies any chest pain with deep breathing or coughing. Heart: Denies any unexplained heaviness, tightness or squeezing, PND or orthopnea. Lungs: Denies any hemoptysis, wheezing, productive or non-productive cough. GI: Denies any abdominal pain, melena, nausea, vomiting, diarrhea or constipation. GU: Denies any frequency, urgency, dysuria or hematuria. Musculoskeletal: Denies any muscle aches, joint pain or tenderness. Neurologic: Denies any seizure activity, paresthesias or paralysis.
>
> PHYSICAL EXAMINATION:
> General: This is a well-developed, well-nourished patient in no apparent distress who is alert and cooperative.

(Tr. 310-11).

In February and March 2014, plaintiff briefly pursued treatment for psychological symptoms at Phelps County Regional Medical Center with David Seaton, Psy.D., but the associated records do not indicate he was ever diagnosed with any specific impairment during this period. (Tr. 372-77). The records from this time also indicate plaintiff would not think past his date for his disability hearing, and he declined even to consider alternatives should he not receive disability benefits. (Tr. 376).

On April 21 and May 9, 2014, Dr. Gorrell examined plaintiff. On May 9, 2014, Dr. Gorrell completed a check-box form Medical Source Statement—Physical. On that form, Dr. Gorrell reported that plaintiff could carry 5 pounds frequently and 10 pounds

occasionally for up to one-third of a typical 8 hour workday.  He could stand or walk continuously for 15 minutes and for 2 hours throughout a workday.  He could sit continuously for 1 hour and 4 hours with usual breaks.  Due to his degenerative spinal condition, plaintiff's ability to push and pull was limited.  Plaintiff could never climb, stoop, kneel, crouch, or crawl.  He could occasionally balance, reach, and handle objects.  He could occasionally finger and feel objects.  He had no restrictions for seeing, speaking, or hearing.  Dr. Gorrell reported that plaintiff should avoid all vibrations, hazards, and heights.  He should avoid moderate exposure to extreme cold, extreme heat, weather, and wet conditions.  And he should avoid concentrated exposure to dust and fumes.  She reported that plaintiff suffers pain and needs to lie down every 30 to 40 minutes for 10 to 15 minutes.  (Tr. 366-68).

### III. ALJ HEARING

Plaintiff's hearing before the ALJ was held on June 18, 2014.  (Tr. 34-57). Plaintiff participated in the hearing by teleconference with counsel and testified to the following facts.  He was 42 years old and had completed the ninth grade.  (Tr. 38-39). He has not worked since August 2011 when he was injured on the job.  (Tr. 41).  He was separated from his wife and did not have any children.  (Tr. 39).  He received vocational training at the auto dealerships that employed him.  (*Id*.)  He either lived alone or was homeless, and had to depend on others to get around and do the things he needed to do. (Tr. 39, 52).

Plaintiff has a hard time doing most daily activities.  (Tr. 41).  He experiences pain in his lower back, down his left leg, in his upper back and neck down to his left arm and fingertips.  (Tr. 41).  He is able to stand for approximately fifteen minutes at a time before he has to sit down for a half-hour to an hour, depending on the severity of the pain. (Tr. 42). He is able to sit for fifteen or twenty minutes at a time before he has to readjust to take pressure off his back.  (Tr. 43).  He takes Percocet, Oxycodone, and Baclofen for his back pain.  (*Id*.)  These medications cause sleepiness, dizzy-headedness, and sometimes aggression.  (Tr. 44).  He has received injections but they have offered limited

relief. (Tr. 45). He also participated in eight weeks of physical therapy, which only aggravated his condition. (*Id.*) He can comfortably lift ten pounds. (Tr. 46).

He has as many as four migraines a month, for which he takes Relpax and two other medications he could not recall. (Tr. 47). His migraines last between two and five days. (*Id.*) On a typical day he lazes around, unable to do household chores. (Tr. 49). He often drops things he is holding in his left hand due to loss of sensation. (Tr. 50). He uses a cane, because he has fallen several times after his left leg gave out on him. (Tr. 44). He claimed to have depression, though he was not being treated for it. (Tr. 50-51).

Vocational Expert (VE) Janice Astard also testified. The VE considered hypothetical individuals with the same age, educational background, and work history as plaintiff. (Tr. 54). The first hypothetical individual could occasionally and frequently lift ten pounds, stand two hours a day for thirty minutes at a time, sit six hours a day for thirty minutes at a time, and occasionally stoop, crouch, kneel, or crawl. (Tr. 54-55). The VE concluded that such an individual could not return to his past work but that there was a wide range of unskilled, sedentary occupations that he could do, credit checker, document preparer, and circuit board assembler. (Tr. 55-56).

The second hypothetical person could occasionally lift ten pounds, frequently five pounds, stand two hours a day for fifteen minutes at a time, sit for three hours a day, and occasionally balance but never stoop, crouch, kneel, or crawl. (Tr. 56). The VE concluded that such an individual could not return to plaintiff's past relevant work and that there were no jobs in significant numbers in the national economy this person could perform. (*Id.*)

## IV. ALJ DECISION

On July 16, 2014, the ALJ issued a decision unfavorable to plaintiff. (Tr. 17-29). The ALJ found that plaintiff met all the Title II insured status requirements through December 31, 2016, and had not engaged in any substantial gainful activity since August 16, 2011, his alleged onset date. (Tr. 19). Further, plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar areas; obesity; and

headaches. (*Id.*) However, the ALJ found that these impairments, taken alone or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 20).

The ALJ determined plaintiff retained the residual functional capacity (RFC) to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (Tr. 20). Plaintiff could lift up to ten pounds frequently or occasionally, stand or walk for two hours in an eight-hour period for at least thirty minutes at a time, and sit for six hours in an eight-hour workday for at least thirty minutes at a time with normal breaks. (*Id.*) In addition, the ALJ found that plaintiff could only occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds, and only occasionally stoop, kneel, crouch, and crawl. (*Id.*) He is limited to occasional pushing and pulling, to occasional overhead reaching and handling with his left arm, and to perform jobs that do not demand attention to detail or complicated tasks or instructions. (*Id.*)

As a result of the RFC finding, the ALJ concluded plaintiff was unable to perform his past relevant work. (Tr. 27). However, given his RFC, age, education, and work experience, the ALJ found there were jobs existing in significant numbers in the national economy that plaintiff could perform: credit checker, document preparer, and circuit board assembler. (*Id.*) Accordingly, the ALJ found plaintiff was not disabled. (Tr. 28-29).

## V. GENERAL LEGAL PRINCIPLES

The role of the court in reviewing the Commissioner's final decision is to determine whether the Commissioner's findings comply with the relevant legal principles and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). Substantial evidence is evidence that is sufficient to cause a reasonable person to agree with the Commissioner's decision. *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). As long as substantial evidence supports the decision, the court may not reverse it

merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). A court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423 (a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step administrative process is used to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987) (describing the five-step process).

Steps One through Three require the claimant to show: 1) he is not currently engaged in any substantial gainful activity; 2) he suffers from a severe impairment; and 3) that impairment meets or equals an impairment listed in Section 404, Subpart P. 20 C.F.R. § 416.920(a)(4)(i)-(iii). At Step Four the Commissioner considers whether the claimant retains the residual functional capacity to perform his previous work. <u>Id.</u> at § 416.920(a)(4)(iv). In determining the RFC, the ALJ must consider all the claimant's impairments, including impairments that are not severe. SSR 96-8p. The claimant bears the burden of demonstrating he is no longer able to return to his previous work. *Pate-Fires*, 564 F.3d at 942. If this burden is met, as it was in this case, the Commissioner must establish at Step Five that the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520 (a)(4)(v).

## VI. DISCUSSION

Plaintiff contends the ALJ erred in two respects. First, plaintiff argues the ALJ did not accord substantial value to the medical opinions of Dr. Rachelle Gorrell, one of his

treating physicians, rather than minimal, weight. Second, plaintiff argues the ALJ incorrectly determined his residual functional capacity. The court disagrees with both assertions.

**A. The ALJ afforded correct weight to Dr. Gorrell's Medical Source Statement**

Plaintiff argues the ALJ failed to consider the RFC as required by SSR-96-8p, because he failed to give reasons for giving Dr. Gorrell's opinion minimal weight. Specifically, plaintiff argues, following *Papesh*, that the reasons the ALJ cited for affording Dr. Gorrell's opinion minimal, rather than substantial, weight are legally insufficient. (ECF No. 14 at 9-13).

The opinion of a treating physician is given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). If the treating physician's opinion is not given controlling weight, the ALJ must give "good reasons" for failing to do so. *Id*. When deciding the weight to give a medical opinion the ALJ considers: the examining relationship; the length of treatment and frequency of examination; the nature and extent of treatment relationship; whether it is supported by relevant medical evidence; the consistency of the opinion with the record as a whole; and any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(c)(6). The ALJ may reject the opinions of any medical provider if they are not supported by the record as a whole. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007). Additionally, when a physician's opinion provides little or no elaboration and is expressed in a conclusory checkbox form, the opinion can be of little evidentiary value. *Anderson v. Astrue*, 696 F.3d. 790, 794 (8th Cir. 2012).

In this case, the ALJ attributed limited weight to Dr. Gorrell's May 9, 2014 opinions, because they were inconsistent with her own treatment records and examination findings, and because they appeared to be based on plaintiff's subjective complaints. (ECF No. 13 at 25). Plaintiff argues that under *Papesh*, while this may have been enough to afford the opinion non-controlling weight, it was not enough to afford the opinions

minimal weight. (ECF No. 14 at 9-10). Plaintiff misapplies *Papesh*. The Court of Appeals in *Papesh* held the treating physician's opinion was entitled to substantial weight, because it was consistent with the overall record, it comported with Papesh's own credible description of her limitations, and it contradicted only *one* other doctor's opinion. *Papesh*, 786 F.3d at 1131-32. None of those facts hold in this case.

Here, the ALJ found Dr. Gorrell's Medical Source Statement was against both Dr. Gorrell's own treatment records and the evidence on the whole. As the ALJ explained, Dr. Gorrell's notes "consistently indicate that the claimant had essentially normal range of motion throughout, with a normal gait and no muscle spasms," and that "numerous physical examinations have consistently failed to support that these impairments are as functionally limiting as the claimant alleges." (ECF No. 13 at 25-26). Moreover, the MSS provided by Dr. Gorrell was a checkbox form with very little supportive information provided in it. (Tr. 367-68). A medical opinion may be of limited weight, if it provides only conclusory statements or is inconsistent with the record. *Papesh*, 786 F.3d at 1132. An ALJ may "discount or even disregard the opinion . . . where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id*.

As stated, the ALJ also concluded that Dr. Gorrell's MSS appeared to be based on plaintiff's subjective complaints. The ALJ concluded that these complaints were only partially credible, which is a legally sufficient reason for the ALJ to disregard Dr. Gorrell's medical source statement. *See Gaddis v. Chater*, 76 F.3d 893, 895-96 (8th Cir. 1996) (noting that an ALJ may discount physician's opinion if it is based on discredited subjective complaints). The ALJ did not err in affording Dr. Gorrell's opinion limited weight.

**B. The ALJ appropriately determined plaintiff's RFC finding**

A claimant's RFC is what he can do despite his limitations. 20 C.F.R. § 404.1545. Plaintiff claims there is no medical evidence to support the ALJ's RFC determination. Plaintiff asserts the ALJ improperly discounted his statements and arbitrarily concluded

he had the ability to perform a limited range of sedentary work. (ECF No. 14 at 13). The court disagrees.

It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. *Pearsall*, 274 F.3d at 1217. In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. In evaluating a claimant's subjective complaints, the ALJ must consider all evidence relating to: the claimant's daily activities; duration, frequency and intensity of pain; dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1994). Subjective complaints may be discounted, if they are inconsistent with the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 929 (8th Cir. 2015). The Commissioner uses medical sources to provide evidence about several factors, including RFC, but the ultimate decision on these matters belongs to the Commissioner. C.F.R. § 404.1527(d)(2).

Substantial evidence supports the ALJ's finding of the plaintiff's RFC. Plaintiff claimed to suffer from depression at various points in the hearing. (ECF No. 13 at 44, 50-51). However, there is no evidence he was ever diagnosed or treated for it. Similarly, although plaintiff periodically complained of migraines, the record fails to support his headaches occurred at the frequency, duration, or severity he alleged. In fact, in a follow-up visit in March 2014, three months before the ALJ hearing, plaintiff reported no complaints of headaches at all. (ECF No. 13 at 310). Further, there is also no evidence plaintiff had been prescribed, or actually required the assistance of, the cane he testified he uses for walking.

During a mental health visit with Dr. Seaton in March 2014, plaintiff spoke at length about receiving disability and about his worrying over the outcome of the administrative hearing, "yet declined to consider alternatives should that not be successful." (Tr. 376). The ALJ thus concluded the plaintiff's testimony as to the nature and severity of his symptoms was only partially credible and afforded it little weight.

These were sufficient reasons for doing so. *Andrews v. Colvin*, 791 F.3d at 929; *see also, Gaddis v. Chater*, 76 F.3d 893, 896 (8th Cir. 1996) (holding an ALJ may consider the element of strong secondary gain in judging a plaintiff's credibility).

After evaluating the credibility of plaintiff's subjective complaints, the ALJ concluded plaintiff could lift or carry up to ten pounds occasionally or frequently. This was consistent with plaintiff's own testimony at the hearing that he was comfortably able to do so. (Tr. 46). The ALJ found the plaintiff could stand or walk for two hours for thirty minutes at a time during an eight hour day. This was consistent with Dr. Gorrell's opinion on the Medical Source Statement. (Tr. 367). The ALJ found plaintiff could sit for thirty minutes at a time during an eight hour period. This was consistent with plaintiff's testimony that he could sit between a half-hour to an hour depending on the pain. (Tr. 42-43). The ALJ found the plaintiff could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. This was reasonable given plaintiff's chronic back problems. The ALJ found that plaintiff could occasionally stoop, kneel, crouch, and crawl, and that plaintiff could perform only occasional pushing and pulling and occasional overhead reaching and handling with the left arm. These findings are consistent with the plaintiff's testimony that he cannot do much around the house and has difficulty with numbness in his left hand. (Tr. 48-50).

Last, due to reports of headaches and side effects of medications, the ALJ found plaintiff could perform only jobs that do not demand attention to details or complicated tasks. This again is supported by both the record and plaintiff's testimony. (Tr. 44).

## VII. CONCLUSION

For the foregoing reasons, the final decision of the Acting Commissioner of Social Security is affirmed. An appropriate Judgement Order is issued herewith.

                                              /S/ David D. Noce
                                   **UNITES STATES MAGISTRATE JUDGE**

Signed on March 6, 2017.